**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CARLOS OTERO, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 24-2331 (RC) |
| | : | |
| v. | : | Re Document No.: 5 |
| | : | |
| GOVERNMENT OF THE DISTRICT OF COLUMBIA, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**GRANTING DEFENDANT'S MOTION TO DISMISS**

**I. INTRODUCTION**

On May 10, 2023, Carlos Otero ("Plaintiff" or "Mr. Otero") was arrested by an officer of the Metropolitan Police Department ("MPD") based on what appeared to be an active bench warrant issued for his failure to appear at a court hearing on April 5, 2023. Though the warrant had been quashed by the issuing judge on May 2, Plaintiff claims that the District of Columbia ("Defendant" or "District") failed to update its records promptly, leading to his unlawful detention. Plaintiff has sued the District under 42 U.S.C. § 1983, claiming the District's longstanding policies and practices caused Mr. Otero's arrest, violating his Fourth and Fifth Amendment rights. In addition, Plaintiff brings common law negligence and false arrest or imprisonment claims against the District. Defendant filed a motion to dismiss Plaintiff's Complaint for failure to allege a plausible claim under 42 U.S.C. § 1983 and failure to plead a viable claim for relief under either common law negligence or false arrest/imprisonment. For the reasons set forth below, the Court grants Defendant's motion to dismiss.

## II. BACKGROUND

Plaintiff was arrested by an MPD officer on Wednesday, May 10, 2023. Compl. ¶ 10, ECF No. 1. The arresting officer informed Mr. Otero that he would be held until Monday, May 15, and then sent to the District of Columbia Superior Court due to what appeared to be an active bench warrant issued against him for failure to appear at a court hearing in April. *Id.* ¶ 11. Although the bench warrant had been quashed by the issuing judge on May 2, this update was not reflected in the "District system" at the time of the arrest. Def. D.C.'s Mot. Dismiss Pl.'s Compl. ("Mot. Dismiss") at 3–4, ECF No. 5. Mr. Otero informed the arresting officer that the bench warrant had been quashed. Compl. ¶ 30. In addition, Mr. Otero suggested the arresting officer call his girlfriend for confirmation that the warrant had been quashed. Compl. ¶ 31. The girlfriend then provided the officer information supporting Mr. Otero's claim that the warrant had been quashed. Compl. ¶ 32. Even so, the officer proceeded with the arrest and detained Mr. Otero for "days." Compl. ¶ 14.

Plaintiff subsequently filed a three-count complaint against the District alleging that (1) the District's inadequate policies and practices for tracking recalled warrants resulted in Mr. Otero's false arrest and violated Mr. Otero's Fourth and Fifth Amendment rights, providing the basis for liability under 42 U.S.C. § 1983; (2) the arrest was caused by negligent conduct on behalf of District employees, constituting common law negligence; and (3) the arrest and detention of Mr. Otero by the MPD constituted common law false arrest and false imprisonment. Compl. ¶¶ 33–34, 36, 43–44, 46–47.

Defendant filed a motion to dismiss, arguing first that Mr. Otero's 42 U.S.C. § 1983 claim failed to establish a predicate constitutional violation and failed to demonstrate that a custom or policy of the District was the moving force behind any constitutional violation. Mot.

Dismiss at 5.  Second, Defendant asserts that Mr. Otero's common law false arrest/imprisonment claim is time barred because the complaint was filed over a year after his alleged false arrest or, in the alternative, that the complaint fails to allege sufficient facts to demonstrate that Mr. Otero's arrest was unlawful or that the officer lacked probable cause to detain him.  Mot. Dismiss at 11–12.  Finally, Defendant argues Mr. Otero's negligence claim should be dismissed under the public duty doctrine.  Mot. Dismiss at 14.  Plaintiff has filed an opposition, Pl.'s Opp'n to Def.'s Mot. Dismiss Pl.'s Compl. ("Pl.'s Opp'n"), ECF No. 7, and Defendant has filed a reply.  Def.'s Reply in Supp. of Def. D.C.'s Mot. Dismiss ("Def.'s Reply"), ECF No. 9.  The District's motion to dismiss is thus ripe for review.

### III.  LEGAL STANDARDS

Rule 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plaintiff's factual allegations must be "above the speculative level," *Twombly*, 550 U.S. at 555, such that the facts, taken as true, are "suggestive of illegal conduct." *Id.* at 563 n.8.  "A claim crosses from conceivable to plausible when it contains factual allegations that, if proved, would 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).  While a complaint need not provide "detailed factual allegations," a plausible claim requires more than bare "labels and conclusions." *Twombly*, 550 U.S. at 545.  As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to

withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. When considering a motion to dismiss, the court must presume that the complaint's factual allegations are true and draw all reasonable inferences in the plaintiff's favor. *See N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020); *see also Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 529 (D.C. Cir. 2025). In addition, the court may consider only the facts alleged in or attached to the complaint and any matters of which the court may take judicial notice. *Hurd v. D.C., Gov't*, 864 F.3d 671, 678 (D.C. Cir. 2017).

## IV.  ANALYSIS

### A.  Municipal Liability Under 42 U.S.C. § 1983

42 U.S.C. § 1983 provides a private cause of action against local governments and municipalities, including the District, for the deprivation of any federally protected rights, privileges, or immunities secured by the Constitution or by statute. *See* 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 700–01 (1978). To hold a municipality liable for the actions of its employees under § 1983, the plaintiff must pass a two-step inquiry. *See Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003). First, the plaintiff's complaint must state a claim for a predicate constitutional violation. *Id.* Second, the plaintiff must show that a custom or policy of the municipality was the "moving force" behind the constitutional violation. *Id.*; *Monell*, 436 U.S. at 694–95. Under *Monell v. Department of Social Services*, a municipality can be held liable under § 1983 only if the municipality's policy or custom causes the plaintiff's injury; liability does not attach on a theory of respondeat superior. *See Monell*, 436 U.S. at 691–94.

Defendant argues that Plaintiff's complaint fails to meet the requirements for municipal liability under 42 U.S.C. § 1983. Mot. Dismiss at 5. This is so, according to the District,

because Plaintiff neither plausibly alleges an underlying constitutional violation, nor provides the requisite factual content required to demonstrate that a custom or policy of the municipality was the "moving force" behind said constitutional violation. *Id.* at 5, 8. The Court agrees with both points.

1. Failure to Allege a Predicate Constitutional Violation

First, the Court addresses Defendant's argument that Mr. Otero has not articulated any predicate constitutional violations. Mot. Dismiss at 5–7. Mr. Otero alleges that the District's "actions, and failure to act" were the moving force behind violations of his "Fourth and substantive Fifth Amendment rights." Compl. ¶ 34. Specifically, Mr. Otero claims that the District and its employees "have had a longstanding custom and practice of arresting and detaining people pursuant to bench warrants that have been quashed and should have been re-called," and that this practice resulted in Mr. Otero's improper arrest and detention. *Id.* ¶ 33. Mr. Otero's claims are virtually identical to the § 1983 claim that the D.C. Circuit rejected in *Vasquez v. District of Columbia*, 110 F.4th 282 (D.C. Cir. 2024).

There, the plaintiff Jose Vasquez shared the same name and date of birth as another man who was subject to an active fugitive warrant. *Id.* at 284. An MPD officer stopped Mr. Vasquez on October 23, 2016 for a traffic violation. *Id.* at 285. The officer arrested Mr. Vasquez based on the other man's warrant, despite an instruction in the warrant entry stating "DO NOT DETAIN," which had been added after prior misidentifications of Mr. Vasquez. *Id.* at 285–86. Mr. Vasquez was detained for eleven days before the error was rectified. *Id.* at 286. Following a traffic stop on March 3, 2017, Mr. Vasquez was once again arrested—this time by the Secret Service—under the same warrant. *Id.* When the Secret Service placed him under MPD's custody, Mr. Vasquez "vehemently protested his detention and professed his innocence to the

5

MPD officers who detained him," yet the officers ignored his warnings. *Id.* The D.C. Circuit held that Mr. Vasquez had not suffered a violation of his constitutional rights:

> Mr. Vasquez attempts to make the general point that if MPD had better policies and protocols in place, Mr. Vasquez would not have been misidentified and wrongly detained. Maybe so. But municipalities are not liable under Section 1983 for all harm-causing . . . policies, and Mr. Vasquez does not cite to a single case that explains how MPD's alleged negligence is unconstitutional.

*Id.* at 289 (internal citation omitted). The D.C. Circuit explained that the argument that the District violated the Fourth Amendment based on the actions of the arresting MPD officers "is foreclosed by *Monell* itself." *Id.* That was so because under *Monell*, "a municipality cannot be held liable *solely* because it employs a tortfeasor." *Id.* (quoting *Monell*, 436 U.S. at 691).

The same principle applies here. Like Mr. Vasquez, Mr. Otero alleges that the District's warrant tracking system contained errors that resulted in Fourth and Fifth Amendment violations. *Id.* at 286–87, 289; Compl. ¶¶ 33–34. Both plaintiffs protested upon being arrested and explained to the police why they believed the warrant was faulty, and following the lack of police investigation into the status of the warrants, both were subsequently detained for multiple days. *Vasquez*, 110 F.4th at 285–86; Compl. ¶¶ 11–14; 30–32. Like Mr. Vasquez, Mr. Otero does not point to any case explaining how the District's alleged negligence in maintaining its warrant system violates the Fourth Amendment. *See Vasquez*, 110 F.4th at 289 (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 123 (1992)). The D.C. Circuit further held that Mr. Vasquez's invocation of the Fifth Amendment was also "unavailing because there is no cognizable argument that demonstrates the Fifth Amendment's relevance to the facts [his] complaint alleges." *See id.*; *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that where the Fourth Amendment "provides an explicit textual source of constitutional protection" against the government's alleged conduct, the plaintiff's claim must be analyzed under the

6

Fourth Amendment, not the Fifth Amendment's "more generalized notion of 'substantive due process'").

Just like in *Vasquez*, where the plaintiff challenged MPD's protocols for handling the warrant system, Plaintiff here challenges the delay in removing recalled warrants from the "District system." *Vasquez*, 110 F.4th at 289; Compl. ¶ 23. Mr. Otero fails to plead any fact that would distinguish his Fourth and Fifth Amendment claims from those of Mr. Vasquez. While he attempts to differentiate the instant case from *Vasquez*, arguing that the warrant there was valid while the warrant in this matter is not, *see* Pl.'s Opp'n at 15, 17, this is a distinction without a difference. *Vasquez* stands for the point that a municipality has not committed a constitutional violation when an arresting officer relies on a warrant that *appears* valid—whether or not it actually is—without first adjudicating a suspect's protestations about the warrant's invalidity. 110 F.4th at 289. Controlling D.C. Circuit precedent therefore bars Plaintiff's constitutional claims.

### 2. Failure to Allege a Municipal Policy or Custom

The Court now turns to the District's argument that Mr. Otero has not alleged a municipal policy or custom as the cause of his harm. Mot. Dismiss at 8–11. The D.C. Circuit has laid out four ways where a policy set by a municipality can result in liability under § 1983:

> [1] the explicit setting of a policy by the government that violates the Constitution; [2] the action of a policy maker within the government; [3] the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become "custom"; or [4] the failure of the government to respond to a need (for example, training of employees) in such a manner as to show "deliberate indifference" to the risk that not addressing the need will result in constitutional violations.

*Baker*, 326 F.3d at 1306 (citations omitted). Mr. Otero's complaint seems to assert the first, third, and fourth bases for liability under *Baker*—that the District's "policies and practices and their implementation" caused Mr. Otero's arrest and subsequent detention, and that it "was

7

obvious that this type of situation would commonly occur yet the District had no procedure in place."[1]  Compl. ¶ 3.  "Although the [C]ourt could try to surmise which theory of municipal liability has the strongest support in the complaint, this is not our role."  *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015).  As a threshold matter, Plaintiff's failure to identify and plead the elements of the relevant type of municipal policy inherently results in the Court being "unable to determine" whether Plaintiff has provided plausible support for his claim.  *Id.* ("[I]n order for the district court to assess whether [the plaintiff] stated a facially plausible complaint, [the plaintiff] needed to assert the elements of the type of municipal policy that caused her injury.").  This omission alone provides an independently sufficient basis to dismiss Plaintiff's federal claim.  Yet even if the Court assumes Mr. Otero is pursing the first, third, and fourth bases for liability under *Baker*, his complaint fails to provide the requisite factual content to meet the pleading standards laid out in *Twombly* and *Iqbal* for any of the three bases.

Plaintiff must plead "sufficient factual matter" to state a plausible claim.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  Conclusory statements without factual support are not enough to establish facial plausibility.  *Iqbal*, 556 U.S. at 678–79 (holding that "a plaintiff armed with nothing more than conclusions" will not reach discovery).  Moreover, not just any factual content will suffice: a complaint alleging facts "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief."

---

[1] Plaintiff clarifies in his opposition that he is indeed pursuing the first, third, and fourth of the "*Baker* theories" to establish his *Monell* liability claim.  Pl.'s Opp'n at 17.  Yet as Defendant points out in its reply, Mr. Otero's opposition cannot make up for deficiencies in his complaint, which failed to expressly assert which *Baker* theories Mr. Otero sought to pursue.  Def.'s Reply at 5–6.  "It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Hawkins v. Washington Metro. Area Transit Auth.*, 311 F. Supp. 3d 94, 109 (D.D.C. 2018) (citation omitted).  Nor can a plaintiff overcome a 12(b)(6) motion to dismiss by adding new information in an opposition brief.  *Id.* (citing *Iqbal*, 556 U.S. at 678).

*Id.* at 678 (cleaned up). This standard applies to § 1983 claims. *See Blue*, 811 F.3d at 20 (explaining that a plaintiff must plead the necessary elements "with adequate factual support" in the context of § 1983 claims); *see also Trimble v. District of Columbia*, 779 F. Supp. 2d 54, 59 (D.D.C. 2011) ("[M]erely speculating that an unidentified policy and uncorroborated practice or custom exists without providing any factual heft to support the allegation is insufficient to state a claim under § 1983."). Conversely, a plaintiff sufficiently pleads a § 1983 claim against a municipality when his complaint cites specific incidents that plausibly demonstrate a custom or pattern of behavior on behalf of the municipality. *See, e.g.*, *Warren v. District of Columbia*, 353 F.3d 36, 39–40 (D.C. Cir. 2004) (finding that statements such as "they stuck the same needles in everybody's arms to draw blood" (alterations omitted) were sufficient factual allegations to state a claim of a custom or policy of prisoner mistreatment).

First, Mr. Otero's complaint fails to assert sufficient facts demonstrating how the MPD's conduct during his arrest and detention was the result of a District of Columbia "policy." *Baker*, 326 F.3d at 1306. It is well established that in a § 1983 claim, a municipality cannot be subject to liability unless the harm was caused in the implementation of "official municipal policy." *Lozman v. Riviera Beach*, 585 U.S. 87, 95 (2018) (citation omitted). Mr. Otero asserts that warrants issued by Superior Court are entered into "the District system" and checked by the MPD. Compl. ¶¶ 17–18, 20–21. He further elaborates that "the District does have a system for re-calling quashed warrants from its system," but that this system "moves so slowly that quashed warrants remain in the system for days or longer" after recall. Compl. ¶¶ 22–23. As Defendant points out, Mr. Otero does not identify the name of the "system" allegedly used by the District and MPD to track warrants. Def.'s Opp'n at 8. By labeling the system MPD uses to track

9

warrants as "the District's" system, *see* Compl. ¶¶ 17, Plaintiff concludes that the warrant tracking system utilized by the arresting officer was an official municipal policy of the District.

But we "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Plaintiff provides no factual allegations indicating that the warrant tracking system was implemented or controlled by the District. In general, "[t]he mere assertion that the police officer 'was acting . . . pursuant to the policies of [the] defendant . . .' is not specific enough to withstand dismissal." *Miller v. Barry*, 698 F.2d 1259, 1261 (D.C. Cir. 1983) (per curiam). To establish that the District was the "moving force" behind the alleged injury, Plaintiff must demonstrate that the District's "*deliberate* conduct" deprived him of his federal rights. *Bd. of Cnty. Comm'rs. of Bryan Cnty. v. Brown*, 520 U.S. 397, 397 (1997). Plaintiff fails to provide facts suggesting that the warrant tracking system was a policy implemented by the District with the "requisite degree of culpability," knowledge, or intent that it would lead to unlawful detentions. *Id.*

Plaintiff further fails to demonstrate a sustained "custom" or practice of false arrests stemming from faulty warrant tracking on behalf of the District. *Baker*, 326 F.3d at 1306. A policy or custom "must be pervasive to support municipal liability." *Tabb v. District of Columbia*, 605 F. Supp. 2d 89, 96 (D.D.C. 2009) (citing *Carter v. District of Columbia*, 795 F.2d 116, 123–24 (D.C. Cir. 1986)). Standing alone, Mr. Otero's detainment does not support an inference of pervasiveness. Beyond his own arrest, Mr. Otero does not provide any facts suggesting that a "pattern of violations" has occurred. *See Lovett v. United States*, No. 1:23-cv-02879, 2024 WL 4286054, at *11 (D.D.C. Sep. 25, 2024). In fact, he goes no further than the bald conclusory assertion that "the District has a custom of arresting and detaining people

10

pursuant to bench warrants that have been quashed and should have been re-called from the system." Compl. ¶ 26. "A single incident is only anecdotal," and without "anything beyond conclusory assertions, the [§ 1983] claims against the District must be dismissed." *See Lovett*, 2024 WL 4286054, at *11; *see also City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*.").

      Finally, Plaintiff fails to provide sufficient factual support for a failure to train theory. *See Baker*, 326 F.3d at 1306. Mr. Otero alleges that "[o]fficers are not taught to check the Superior Court docket to see whether warrants have been quashed," and that "the District does not have a system for officers to follow up when they are told that a warrant has been quashed and recalled." Compl. ¶¶ 24–25. The Supreme Court has noted that a failure to train theory is only a viable basis for liability in "limited circumstances," and a "municipality's culpability for deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A municipality's failure to train its employees "must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact'" to be thought of as an actionable policy or custom under § 1983. *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Deliberate indifference is a "stringent standard," "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (quoting *Bryan Cnty.*, 520 U.S. at 410). Essentially, the District's "'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution.'" *Id.* at 61–62 (quoting *Canton*, 489 U.S. at 395 (O'Connor, J., concurring in part and dissenting in part)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate

deliberate indifference for purposes of failure to train." *Id.* at 62 (quoting *Bryan Cnty.*, 520 U.S. at 409).

As explained above, Plaintiff demonstrates no such pattern. His complaint presents no evidence of any prior incidents involving District employees mishandling quashed warrants, let alone evidence of a systemic issue. More importantly, Mr. Otero has pled no facts indicating that decisionmakers at the District knew or should have known of deficiencies in training of MPD officers regarding checking for recalled warrants, nor that any such deficiencies would likely result in constitutional violations. Nor does Mr. Otero allege that District officials ignored repeated warnings about the warrant tracking system or maintained a "policy of inaction" regarding constitutional violations. *Canton*, 489 U.S. at 395 (O'Connor, J., concurring in part and dissenting in part). Plaintiff's conclusory allegations are insufficient to state a plausible claim for relief. *See Page v. Mancuso*, 999 F. Supp. 2d 269, 283–84 (D.D.C. 2013) (finding that conclusory failure to train allegations without corresponding assertions of fact "clearly miss the *Iqbal* and *Twombly* pleading-standard mark"). Accordingly, Plaintiff's § 1983 claim against the District must be dismissed.

### B. Supplemental Jurisdiction

The Court has original jurisdiction over Mr. Otero's federal § 1983 claim in Count I. 28 U.S.C. § 1331. In addition, federal district courts have supplemental jurisdiction over state claims arising from the same case or controversy as federal claims over which they have original jurisdiction. 28 U.S.C. § 1367(a). As Counts II and III are based on alleged violations of D.C. law arising from the same operative facts as the federal claim, Compl. ¶¶ 39–45, 46–50, the Court had supplemental jurisdiction over these claims at the outset of the suit. However, where a district court "dismiss[es] all claims independently qualifying for the exercise of federal

jurisdiction, [the court] ordinarily dismiss[es] as well all related state claims." *Artis v. District of Columbia*, 583 U.S. 71, 74 (2018).

Here, the Court will decline to exercise supplemental jurisdiction over Counts II and III.[2] 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right."). Mr. Otero's claims present "the usual case" where pretrial dismissal "point[s] toward declining to exercise jurisdiction over the remaining state-law claims." *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 424 (D.C. Cir. 2005) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). As such, the Court will dismiss without prejudice Mr. Otero's state-law claims so that a D.C. court may consider them in the first instance. Because federal law tolls the statute of limitations during the pendency of the federal case and for at least 30 days thereafter, "no unfairness attaches to [this] decision." *Kyle v. Bedlion*, 177 F. Supp. 3d 380, 400 (D.D.C. 2016); 28 U.S.C. § 1367(d).

## V.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (ECF No. 5) is granted. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 22, 2025                                                                 RUDOLPH CONTRERAS
                                                                                                          United States District Judge

---

[2] Because the Court declines to exercise supplemental jurisdiction over the state-law claims, the Court does not reach Defendant's arguments that these claims fail on the merits.

13